IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SYLVIA M. FLORES, Individually and as Legal Guardian of the Minor Children X, XX, and XXX, and THE ESTATE OF MARK EVANGELINA LEON, by and through its Personal Representative SYLVIA M. FLORES,<br><br>   Plaintiffs,<br><br>   v.<br><br>DAVID L. YOUNG, Individually and in his Official Capacity as Canyon County Prosecuting Attorney; CANYON COUNTY, a Political Subdivision of the State of Idaho; and JOHN DOES 1 - 5,<br><br>   Defendants. | Case No. CV-05-110-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it defendants' motion to dismiss. The Court heard oral argument on November 29, 2005, and the motion is at issue. For the reasons expressed below, the Court will dismiss the substantive and procedural due process claims but allow the equal protection and state law claims to go forward. In addition, the Court finds that the defendants are not protected by either absolute or qualified immunity.

Memorandum Decision & Order -- page 1

# ANALYSIS

## 1. Standard of Review

A motion to dismiss should not be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg v. Cult Awareness Network,* 18 F. 3d 752, 754 (9th Cir. 1994). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *See, Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir. 1992).

## 2. Factual Background

In November of 1998, Maria Evangelina Leon ("Angie") married Abel Leon. Over the next five years, Abel repeatedly beat Angie. On at least one occasion, he raped her. Angie tried to protect herself, and her three children, by obtaining Civil Protection Orders, but Abel routinely violated them. By April of 2003, Abel's violence against Angie had produced a long and well-known criminal history in Canyon County, including numerous pending charges.

On April 23, 2003, Abel pled guilty to some of those charges, and obtained the dismissal of others, as part of a plea bargain agreement with Canyon County Deputy Prosecutor Chris Topmiller. Abel's probation officer, and the police officers who knew Abel's history, advised Topmiller that releasing Abel would

place Angie in great danger.

Nevertheless, Topmiller agreed to release Abel on his own recognizance pending sentencing. Abel was released, and he continued to harass Angie. Although Angie repeatedly put the Canyon County Prosecutor's Office on notice of these violations, the Office ignored her pleas for help, tagging her with the nickname, "The Pain" due to her insistent pleading.

On May 19, 2003, Abel murdered Angie.

## 3.     Equal Protection Claim

Plaintiffs' Amended Complaint asserts that defendants treated domestic violence cases less seriously than other types of cases, thereby discriminating on the basis of race and gender. These allegations clearly state a claim upon which relief could be granted. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990).

Defendants respond, however, that the Equal Protection claims of the non-minors are time-barred. Both sides agree that the limitations period on these claims is two years, and that they are timely if they relate back to the filing of the original complaint. The Court finds that they do.

Under Rule 15(c)(2), claims relate back if they arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading." The Equal Protection claim meets this test – it arises out of the same facts pled in the original complaint.

The defendants assert, however, that the Ninth Circuit has put a gloss on Rule 15(c)(2) requiring that the original complaint must have put defendants on notice of the Equal Protection claim in order for it to relate back. The Court disagrees. The only notice required is notice of the "conduct, transaction, or occurrence," and not notice of the particular legal claim. This was made clear in *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir. 1988):

> Under Rule 15, the only question is whether the later claims arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim. When this is so, later-filed claims may relate back, even if they rest on a different legal theory than that of the first claim.

Here, the original complaint alleged that the County Prosecutor did not take domestic abuse claims seriously, and treated them differently than other claims by failing to train its prosecutorial staff on how to handle such claims. Those allegations are the factual predicate for the Equal Protection claim made in the amended complaint. Thus, the original complaint gave defendants notice of the conduct on which the claim was based even if it did not expressly identify the legal theory. That is sufficient under *Kern* and Rule 15(c)(2) to find that the Equal Protection claim relates back to the filing date of the original complaint.

Memorandum Decision & Order -- page 4

**4.     Substantive Due Process Claim**

Plaintiffs allege that Canyon County created a danger to Angie by failing to train its prosecutorial staff, resulting in the release of Abel and the eventual murder of Angie. Defendants respond that this claim is foreclosed by *DeShaney v. Winnebago County*, 489 U.S. 189 (1989).

In *DeShaney*, the Court held that "noting in the language of the Due Process Clause itself requires the State to protect . . . its citizens against invasion from private actors." *Id*. at 195. The decision did, however, create two exceptions. First, "when the State takes a person into its custody . . . the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id*. at 199-200. The Court identified this as the "special relationship" exception. *Id*. While plaintiffs tried to establish a "special relationship" in their briefing, *see Plaintiffs' Response Brief* at p. 12, plaintiffs' counsel conceded at oral argument that he was dropping his claim that this exception applied.

Counsel argued instead that a second exception applied – the "state-created danger" exception. *DeShaney* opened the door to this exception by stating that "[w]hile the State may have been aware of the dangers that the [victim] faced in the free world, it played no part in their creation, nor did it do anything to render him

any more vulnerable to them." *Id*. at 201.  The Ninth Circuit has interpreted this language to allow recovery when the state actor's "conduct places a person in peril in deliberate indifference to their safety." *Kennedy v. City of Ridgefield*, 411 F.3d 1134, 1142 (9th Cir.), *amended* 423 F.3d 1117 (9th Cir. 2005).

The test, as applied here, is whether the County's "affirmative actions placed [Angie] in a situation of danger greater than they would have faced had [the County] not acted at all." *Id*. at 1143.  For example, in *Kennedy*, a police officer made false assurances to the victim that police would patrol his neighborhood to protect him from a man with well-known violent tendencies. *Id.*  In reliance, the victim did not take precautions and was killed by the perpetrator.  The Circuit held that the false assurances were "affirmative actions" that put the victim in greater danger than he would have been in if the officer had merely done nothing.  *Id.*

In this case, there is a similar affirmative act – Deputy Prosecutor Topmiller entered into an agreement to release Abel, thereby unleashing him on Angie.  Topmiller did not stand by and do nothing; he affirmatively acted to procure Abel's release, leading to the murder.  While that is clearly an "affirmative action" under *Kennedy*, it is protected from challenge by the doctrine of absolute immunity.  *See Imbler v. Pachtman*, 424 U.S. 409 (1976) (holding that prosecuting attorney has absolute immunity in making prosecutorial, as opposed to

Memorandum Decision & Order -- page 6

administrative, decisions).  Topmiller's decision to release Abel was prosecutorial in nature, and is hence immune under *Imbler*.

To avoid this result, plaintiffs have pursued a different line of analysis. When the Court asked plaintiffs' counsel at oral argument what affirmative act the County undertook to create the danger to Angie, counsel replied that it was the County's failure to train its prosecutorial staff.

By offering no training, the County was standing idle, doing nothing.  Yet *Kennedy* requires the plaintiffs to show that the County took some action that was more detrimental to Angie than not acting at all.  The plaintiffs have not identified any such action.

An example of a case where more was alleged is *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990).  The claims in *Freeman* were nearly identical to the claims here – an estranged husband with a long history of domestic violence killed his wife after officials did nothing to enforce restraining orders.  However, the plaintiffs in *Freeman* alleged in addition that the police chief was a close friend of the husband/murderer and took action to stop officers under his command from enforcing those restraining orders.  These allegations assert that the state did more than just stand by as the killing took place – the state affirmatively placed the victim in a worse position than she would have been in if the state had simply done

nothing.  Such allegations would satisfy *Kennedy* but are not present in this case.

For all of these reasons, the Court finds that plaintiffs' substantive due process claim must be dismissed.

**5.     Other Federal Claims**

At oral argument, the plaintiffs' counsel conceded that his procedural due process claims should be dismissed along with his claims under the First and Fifth Amendments.  The Court will so order.

**6.     State Law Claims**

The plaintiffs' main state law claim is based on the Restatement (Second) of Torts, § 319 (1977), adopted by the Idaho courts.  *See, e.g., Litchfield v. Nelson*, 835 P.2d 651 (Id. Ct. App. 1986).  Section 319 of the Restatement states that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

The Idaho courts have interpreted this section to require that a "special relationship" be established.  *Litchfield*, 835 P.2d at 655.  *Litchfield* approved a jury instruction stating that "[f]or there to be a special relationship between the actor and the third person, the actor must have the ability and obligation to control the conduct of the third person."  *Id*. at 655-56.  In addition, the harm inflicted by

Memorandum Decision & Order -- page 8

the third person must be foreseeable.

Here, plaintiffs allege that the County had the ability and obligation to control Abel, because the County could have objected to his release and kept him in jail pending his sentencing. Plaintiffs also allege that during the 26 days between Abel's release and the murder, Angie pleaded for help from the County, and these pleas would have given the County grounds for seeking to revoke Abel's release status.

Importantly, the plea bargain agreement contained a condition on Abel's release that he have no contact with Angie. Through this condition, the County had control over Abel. If the Idaho Supreme Court was faced with this issue, the Court is confident that it would hold that plaintiffs have stated a claim that Abel was in the control of the County during the time he was released on his own recognizance.[1]

It is not enough to simply have control, however. Plaintiffs must also state a claim that the County had an obligation to control Abel. The obligation arises when the harm that occurred was foreseeable. Plaintiffs state a claim here by alleging that (1) the County had been warned by the police and probation office

---

[1] The County does not assert that it is protected from the state law claims by any state-equivalent to the doctrines of absolute and qualified immunity applicable to the federal claims.

Memorandum Decision & Order -- page 9

that releasing Abel would put Angie in great danger, and (2) the County was on notice that Abel was violating the terms of his release by harassing Angie.

These allegations state a claim under the Restatement provision quoted above, as interpreted by Idaho courts. Thus, the Court will refuse to dismiss that state law claim at this time.

The plaintiffs also allege in their Amended Complaint that they are bringing claims based on provisions of the Idaho Constitution comparable to the First, Fifth, and Fourteenth Amendments. *See Amended Complaint* at ¶ 88, p. 20. The County sought dismissal of these claims on the ground that no such cause of action could be brought. Plaintiffs have never responded to that argument, and the Court will accordingly dismiss those claims.

### 7.     Absolute & Qualified Immunity

The surviving federal claim for a violation of the Equal Protection Clause hinges on a lack of training. Plaintiffs claim that the County treated domestic violence claims differently than other claims by failing to train its prosecutorial staff on how to handle these claims.

As so stated, the Equal Protection claim challenges administrative decisions made by the County Prosecutor rather than prosecutorial decisions integral to the judicial process. Thus, under *Imbler*, absolute immunity is not applicable.

Memorandum Decision & Order -- page 10

At most, defendants have qualified immunity.  This protects governmental actors from liability so long as their conduct does not violate clearly established rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Here, more than a decade before the events at issue, the *Balistreri* case, discussed above, established those rights.  A reasonable person would have known that treating domestic violence cases less seriously than other cases implicates the Equal Protection Clause because females are the predominant victims of domestic violence.  The Court therefore refuses to dismiss defendants on the ground of qualified immunity.

**8.     Motion To Reconsider Decision Denying Stipulation**

Upon reconsideration, the Court will grant the stipulation of the parties, and reset the deadlines in this case.  The Court will issue a separate Scheduling Order.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (Docket No. 7) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks to dismiss claims based on substantive due process, procedural due process, the First and Fifth Amendments, and provisions of the Idaho Constitution.  It is denied in all other respects.

Memorandum Decision & Order -- page 11

IT IS FURTHER ORDERED, that the motions for reconsideration (Docket Nos. 32 and 33) are GRANTED.



DATED: **December 1, 2005**

_(signature)_
B. LYNN WINMILL
Chief Judge
United States District Court